## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DAVID STEPHENS** and
**STACEY STEPHENS**,

        Plaintiffs,

vs.                              No.    **CIV 04-1168 MCA/RHS**

**GEICO INDEMNITY COMPANY**,
a foreign corporation,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on ***Plaintiffs' Motion for Partial Summary Judgment and Memorandum in Support*** [Doc. No. 8] filed on December 7, 2004.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court finds that there are genuine issues of material fact which preclude summary judgment on Plaintiffs' breach-of-contract claim at this time.   Accordingly, Plaintiffs' motion is denied.

## I.     BACKGROUND

On September 14, 2004, Plaintiffs David Stephens and Stacey Stephens filed a civil action in state court asserting claims against their insurer, Defendant Geico Indemnity Company, for violation of the Unfair Claims Settlement Practices Act (UCSPA), breach of an implied covenant of good faith and fair dealing, and breach of contract.  Defendant

removed the action to the United States District Court for the District of New Mexico on October 14, 2004. [Doc. No. 1.] On December 7, 2004, Plaintiffs filed a motion for partial summary judgment on the breach-of-contract claim asserted in Count 3 of their *Complaint*. [Doc. No. 8.] Briefing on this motion was completed on January 21, 2005. [Doc. No. 18.]

The undisputed facts and evidence of record regarding Plaintiffs' summary-judgment motion can be summarized as follows. On or about May 13, 2004, Plaintiff David Stephens notified Defendant of a claim for the loss of his 1994 Toyota Supra automobile due to theft. [Ex. B, C to Doc. No. 8; Ex. 5 to Doc. No. 11.] This automobile was covered against loss due to theft pursuant to the physical-damage provisions of an insurance policy issued by Defendant on April 24, 2004. [Ex. A to Doc. No. 8.] Those provisions of the policy limit Defendants' liability for such a loss to "the actual cash value of the property at the time of the loss," which "will not exceed the cost to repair or replace the property, or any of its parts." [Ex. A at 9.]

During the investigation of Plaintiffs' claim, the parties disputed the actual cash value of the stolen automobile. As of July 15, 2004, Plaintiffs had rejected two offers to settle their claim, and Defendant's investigation of the claim was still ongoing. [Ex. D to Doc. No. 8.] On July 30, 2004, Defendant sent Plaintiffs a letter requesting additional documentation of their claim and scheduling an examination under oath of Plaintiff David Stephens on August 16, 2004. [Ex. 3 to Doc. No. 11.] Plaintiff David Stephens appeared at the examination on that date but did not bring a substantial portion of the requested documentation with him. [Ex. 1 to Doc. No. 11.] Consequently, the examination under oath

was continued until Plaintiffs provided additional information in response to Defendant's requests.  The examination eventually was rescheduled for November 3, 2004.  [Ex. 2 to Doc. No. 11.]  On December 20, 2004, Defendant conveyed a third offer to settle Plaintiffs' claim.  This third offer was for $31,000, the amount for which Plaintiffs claimed they had purchased the automobile.  [Ex. 4 to Doc. No. 11.]

Plaintiffs contend that Defendant's earlier refusal to settle their claim for this amount, as well as Defendant's decision to continue its investigation and request additional documentation, was unreasonable and resulted in the *de facto* denial of their claim. Defendant contends that any delays in processing Plaintiffs' claim were caused by Plaintiffs themselves and, in any event, were not unreasonable under the terms of the policy.

In support of its position, Defendant points to the provisions in the insurance policy which require the insured to cooperate and assist the insurer in a truthful manner with respect to the investigation of the loss, and with respect to securing and giving evidence.  [Ex. A, at 9, 15.]  According to Defendant, Plaintiffs' compliance with these provisions of the policy was a necessary prerequisite to determining the actual cash value of the stolen automobile and the limits of Defendant's liability under the policy.

Defendant contends that Plaintiffs did not comply with these provisions of the policy in a timely and substantial manner, as evidenced by the record of the first examination under oath, at which Plaintiffs failed to produce a substantial portion of the requested documentation necessary to determine the stolen automobile's value and the limits of Defendant's liability under the policy.  Defendant further contends that the documents and

-3-

testimony eventually produced by Plaintiffs revealed issues that required additional investigation.

For example, Plaintiff David Stephens informed the examiner that he had paid for the automobile with $31,000 in cash, yet he initially produced insufficient documentation in support of the purchase price or the source of the funds used to purchase the automobile. Additionally, the Motor Vehicle Division had erroneously issued a salvage title on the automobile, and further investigation was required to correct this error and determine that the vehicle had good title at the time of the loss.  [Ex.  1, 2, 3, 4, 5 to Doc. No. 11.]  The policy for the automobile in question went into effect on April 24, 2004, approximately two to three weeks before Plaintiffs reported the loss.  [Ex. A, at declarations page.]  The timing of the loss in relation to the effective date of the policy limited the parties' ability to investigate and resolve such issues before Defendant was notified of Plaintiff's claim.

In support of their contention that the value of the stolen automobile was greater than the amount of Defendant's first two offers, Plaintiffs alleged that the automobile had a number of special features and custom parts that attracted collectors and gave the automobile a higher value.  Defendant points out, however, that the insurance policy in question does "not cover loss for custom parts or equipment unless the existence of those custom parts or equipment has been previously reported . . . and an endorsement to the policy has been added."  [Ex. A, N.M. amend. at 2.]  Defendant contends that this provision of the policy prompted further investigation of Plaintiffs' claim because the records in Defendant's possession at the time of the loss contained no notice or request to cover custom parts or

equipment under this type of endorsement, and the added value of the customization and special features alleged by Plaintiffs was not easily determined by standard appraisal methods.  [Ex. 4.]

## II.    ANALYSIS

### A.    Standard of Review

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  A fact is "material" if it might affect the outcome of the case.  See id. at 248.  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See id. at 324.  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995).

Apart from such limitations imposed by the Federal Rules of Evidence, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

**B.  Burden of Proof**

Under the standard articulated above, whether the movant is entitled to summary judgment on a particular claim may depend on whether he or she bears the burden of proof at trial with respect to that claim.  When the movant is also the party bearing the burden of persuasion on the claim for which he or she is seeking summary judgment, the movant must show that the record as a whole satisfies each essential element of his or her case and negates any affirmative defenses in such a way that no rational trier of fact could find for the non-moving party.  See 19 Solid Waste Dep't Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir.  1998); Newell v. Oxford Mgmt., Inc., 912 F.2d 793, 795 (5th Cir. 1990); United Missouri Bank of Kansas City, N.A. v. Gagel, 815 F. Supp. 387, 391 (D. Kan. 1993).

In this case, the parties disagree as to who bears the burden of proof.  Defendant contends that the issue of Plaintiffs' compliance with the assistance and cooperation provisions of the policy constitutes an essential element of Plaintiffs' breach-of-contract

claim, for which Plaintiffs bear the burden of proof at trial, while Plaintiffs contend that this issue is an affirmative defense for which Defendant bears the burden of proof.

I conclude that both parties are at least partially correct. In situations where an insurer seeks to cancel the insurance contract and entirely avoid coverage for a known loss based on the assertion that an insured has failed to comply with the conditions of the policy, New Mexico courts generally have treated such assertions as an affirmative defense. See, e.g., Foundation Reserve Ins. Co. v. Esquibel, 94 N.M. 132, 134, 607 P.2d 1150, 1152 (1980); Green v. General Accident Ins. Co. of Am., 106 N.M. 523, 525, 746 P.2d 152, 154 (1987). I construe Defendant's pleadings as raising such a defense. Thus, insofar as Defendant is relying on Plaintiffs' alleged failure to comply with the conditions of the policy as a basis for refusing to pay *any* amount in response to Plaintiffs' claim, Defendant is raising an affirmative defense for which it bears the burden of proof at trial. Under this affirmative defense, Defendant is essentially claiming a right to cancel the contract based on Plaintiff's alleged breach of its terms.

On the other hand, Defendant's pleading and the evidence attached to its motion papers also contest the essential elements of Plaintiffs' breach-of-contract claim for which Plaintiffs bear the burden of proof at trial. The timeliness of Plaintiffs' assistance and cooperation in investigating their claim is relevant to determining the reasonableness of the procedure Defendant used to determine the actual cash value of the stolen automobile. In this respect, Defendant is alleging disputed issues of material fact concerning the automobile's value and, more specifically, the timing of Plaintiffs' production of the

documents necessary to determine its value during the course of Defendant's investigation of the claim.  Defendant also alleges that its ability to perform under the contract in the manner demanded by Plaintiffs was affected by Plaintiffs' breach of the policy's terms.

New Mexico courts recognize the general principle that "the plaintiff in a contract action must prove his or her damages by a preponderance of the evidence in order to be entitled to compensation for them."  <u>Servants of the Paraclete, Inc. v. Great Am. Ins. Co.</u>, 866 F. Supp. 1560,  1578 (D.N.M. 1994) (citing <u>Mitchell v. Lovato</u>, 97 N.M. 425, 427, 640 P.2d 925, 927 (1982), and <u>Stevens v. Mitchell</u>, 51 N.M. 411, 414, 186 P.2d 386, 389 (1947)).  "The rule appears to be no different for insurance contracts than for other types of contracts."  <u>Id.</u> at 1578-79 (citing and quoting 19  Ronald A. Anderson & Mark S. Rhodes, <u>Couch Cyclopedia of Ins. Law</u> § 79:367,  at 318 (1983)).

The limit of Defendant's liability on the policy at issue here "is the actual cash value of the property at the time of the loss." [Ex. A, at 9.]  Thus, for purposes of their breach-of-contract claim, Plaintiffs bear the burden of proving the actual cash value of the stolen automobile at the time of the loss.  Insofar as Plaintiffs claim additional damages for breach of contract as a result of a delay in payment or *de facto* denial, the principles cited above suggest that they also bear the burden of proving the date by which Defendant reasonably should have known that it was obliged to pay the requested amount.

### C.     **Plaintiffs' Breach-of-Contract Claim**

Plaintiffs' reply brief contends that the issue of liability for the alleged breach of the insurance contract can be separated from the issue of damages for purposes of ruling on their

summary-judgment motion.  [Doc. No. 12, at 2.]  I do not agree with this contention.  On the contrary, I conclude that the elements of liability for Plaintiffs' breach-of-contract claim are so intertwined with the element of damages as to preclude a separate ruling at this time.

For example, if Plaintiffs do not prevail on the issue of damages under the terms of the policy because the value of the stolen automobile is not as high as they claim, then Defendant did not breach the contract by failing to pay that amount.  Further, if Plaintiffs do not prevail on the issue of damages arising from the delay in payment because there was insufficient information to substantiate the amount initially claimed by Plaintiffs, then Defendant did not breach the contract by delaying payment of that amount until the necessary information was provided.   And even if Plaintiffs overcome Defendant's affirmative defense that it was not required to make any payment on Plaintiffs' claim so long as Plaintiffs did not provide the requested information, the Court must still determine the amount to which Plaintiffs would be entitled under the policy and the date on which that amount should have been paid.  For these reasons, I conclude that the disputed issues of material fact concerning damages are intertwined with, if not identical to, the disputed issues of material fact concerning whether the contract was breached and whether Defendant is liable under the policy.

To support their claim that Defendant breached the insurance contract and is liable under the policy at issue here, Plaintiffs rely primarily on the letter of December 20, 2004, in which Defendant offers to settle Plaintiffs' claim for the amount of $31,000.  [Ex. 4.] According to Plaintiffs, this letter constitutes an admission of Defendant's "liability to pay

Plaintiffs' claim in the amount of thirty-one thousand dollars ($31,000)." [Doc. No. 12, at 2.] To support this assertion, Plaintiffs cite <u>Wollard v. Lloyds</u>, 439 So. 2d 217, 218 (Fla. 1983), and <u>Jordan v. Nat'l Grange Mut. Ins. Co.</u>, 393 S.E.2d 647, 651 (W. Va. 1990).

These authorities do not support the proposition for which Plaintiffs cite them. The specific issue addressed in <u>Wollard</u> and <u>Jordan</u> is whether an insured is a prevailing party for purposes of awarding statutory attorney fees after an insurer has agreed to settle a claim on the eve of trial or after litigation has commenced. In the present case, the Court is not in a position to make such an after-the-fact determination of which party prevailed, and Plaintiffs have not moved for summary-judgment on the issue of attorney fees under N.M. Stat. Ann. § 39-2-1 (Michie 2004), or any other aspect of their claim under the relevant provisions of New Mexico's Insurance Code, N.M. Stat. Ann. §§ 59A-16-20 & 59A-16-30 (Michie 2004).

Rather, the question presently before the Court is whether Plaintiffs are entitled to partial summary judgment based on undisputed facts which support each essential element of their breach-of-contract claim. New Mexico courts have recognized that an insurer's claims-handling procedures may be undertaken in bad faith or in violation of the UCSPA even when the insurer does not breach the contract by refusing to pay the full amount requested by the insured. See <u>O'Neel v. USAA Ins. Co.</u>, 2002-NMCA-028, ¶¶ 7-11, 131 N.M. 630, 41 P.3d 356. Accordingly, the breach-of-contract claim raised in Plaintiffs' summary judgment motion must be evaluated independently from Plaintiffs' UCSPA claim and their claim for breach of an implied covenant of good faith and fair dealing.

I conclude that there are disputed issues of material fact which preclude summary judgment on Plaintiffs' breach-of-contract claim at this time.  In particular, Plaintiffs have not presented evidence which establishes that the actual cash value of the stolen automobile is beyond dispute.  Indeed, Plaintiffs' motion papers attach virtually no evidence to document and establish the stolen automobile's actual cash value at any time, and it is unclear whether they wish to accept Defendant's offer of $31,000, or continue to dispute the value of their claim.  Plaintiffs' motion papers also do not attach evidence of an endorsement to the policy in effect at the time of the loss that would cover any custom parts or equipment.

Defendant has presented evidence which supports a reasonable inference that, during the pendency of its investigation, there was insufficient information to determine whether its limit of liability for the loss of Plaintiff's automobile was equal to the $31,000 purchase price alleged by Plaintiffs.  In particular, the Court notes the evidence regarding the delay in documenting this alleged purchase price, resolving the issue of whether the automobile had a salvage title, and inquiring about coverage issues relating to custom parts or equipment. [Ex. 1, 2, 3, 4, 5.]  Viewing the evidence regarding the causes for the delay in processing Plaintiffs' claim and the dispute over the automobile's value in the light most favorable to Defendant, a rational factfinder could conclude that the scope and duration of Defendant's investigation did not amount to a *de facto* denial of Plaintiffs' claim and that, as a result of this investigation, Defendant made a timely offer to settle the claim in accordance with the terms of the policy.  Such a conclusion would not support judgment as a matter of law in Plaintiffs' favor on their breach-of-contract claim.

In the alternative, Plaintiffs may contend that even if Defendant did not have the information necessary to determine that the actual value of the stolen automobile was $31,000, Defendant still should have paid Plaintiffs a lesser, undisputed amount in the interim.  There remain disputed issues of material fact concerning this contention as well. Viewing the evidence in the light most favorable to Defendant, a reasonable factfinder could conclude that during the time period when Plaintiffs refused Defendant's first two settlement offers, Plaintiffs had not yet substantially or materially complied with the conditions of the policy, and Defendant was prejudiced by such non-compliance during that time period because it was deprived of the means to investigate the claim's validity.  See generally Foundation Reserve Ins. Co., 94 N.M. at 134, 607 P.2d at 1152 (requiring that in order to deny coverage, the insured's breach of policy conditions must be substantial and material, and the insurer must show prejudice); see, e.g., Tran v. State Farm Fire and Cas. Co., 961 P.2d 358, 363-66 (Wash. 1998) (concluding that the insurer met these requirements in the context of a first-party claim where the insured breached the policy's cooperation provisions); Rymsha v. Trust Ins. Co., 746 N.E.2d 561, 563-64 (Mass. App. Ct. 2001) (similar).  Thus, Plaintiffs are not entitled to summary judgment on the alternative theory that the insurance contract required Defendant to pay them a lesser amount before completing their investigation regarding the validity of the $31,000 figure.

**III.    <u>CONCLUSION</u>**

For the foregoing reasons, there exist disputed issues of material fact which require the Court to deny Plaintiffs' motion for partial summary judgment on their breach-of-contract claim.

**IT IS, THEREFORE, ORDERED** that *Plaintiffs' Motion for Partial Summary Judgment and Memorandum in Support* [Doc. No. 8] is **DENIED**.

**SO ORDERED**, this 20th day of May, 2005, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge