**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**DAVID STEPHENS** and
**STACEY STEPHENS**,

      Plaintiffs,

  vs.                          No.    **CIV 04-1168 MCA/RHS**

**GEICO INDEMNITY COMPANY**,
a foreign corporation,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiffs' *Motion to Alter or Amend Judgment* [Doc. 247] filed on January 3, 2006. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies Plaintiffs' motion for the reasons set forth below.

The Court granted summary judgment in Defendant's favor and dismissed this action with prejudice in the *Memorandum Opinion and Order* [Doc. 245] filed on December 22, 2005. A *Final Order* [Doc. 246] dismissing the action pursuant to Fed. R. Civ. P. 58 was entered on the same date. On January 3, 2006, Plaintiffs moved to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). [Doc. 247.]

Computing the time in accordance with Fed. R. Civ. P. 6(a), Plaintiffs' *Motion to Alter or Amend Judgment* was filed within ten days of the entry of judgment. "'[R]egardless

of how it is styled or construed ..., a motion filed within ten days of the entry of judgment that questions the correctness of the judgment is properly treated as a Rule 59(e) motion.'" Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997) (quoting Vreeken v. Davis, 718 F.2d 343, 345 (10th Cir.1983)).  Grounds warranting relief under this rule "include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing Brumark Corp. v. Samson Resources Corp., 57 F.3d 941, 948 (10th Cir.1995)); see Phelps, 122 F.3d at 1324.  A motion under Fed. R. Civ. P. 59(a) does not, however, provide a valid basis "to revisit issues already addressed or advance arguments that could have been raised in prior briefing," or "to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Servants of Paraclete, 204 F.3d at 1012; accord 11 Wright, Miller & Kane, *Federal Practice and Procedure Civil 2d* § 2810.1, at 127-28 (1995).

Plaintiffs' *Motion to Alter or Amend Judgment* largely consists of an attempt to raise arguments or evidence that were available at the time of the original motion for summary judgment and could have been raised in prior briefing.  In particular, all of the exhibits attached to Plaintiffs' *Motion to Alter or Amend Judgment* consist of deposition testimony taken prior to the filing Plaintiffs' response [Doc. 202] to Defendant's motion for summary judgment filed on August 29, 2005.  Therefore, these exhibits do not qualify as "new evidence previously unavailable" for purposes of Fed. R. Civ. P. 59(e).

>Under similar circumstances, the Tenth Circuit has recognized that:
>
>"A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim. Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses, but 'equal attention should be given to the proposition that there must be an end finally to a particular litigation.' [Citation omitted.] ... Much of the value of summary judgment procedure in the cases for which it is appropriate ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back along thereafter and fight on the basis of some other theory."

Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994) (quoting Freeman v. Continental Gin Co., 381 F.2d 459, 469-70 (5th Cir.1967)). For these reasons, the Court declines to revisit arguments or evidence that were or could have been raised in prior briefing and instead limits its analysis to those issues which fall within the permissible grounds for granting relief under Fed. R. Civ. P. 59(e).

The need to correct clear error is a permissible basis for granting relief under this rule, and Plaintiffs' motion asserts that the Court's prior ruling clearly erred in two respects: (1) applying an improper standard of review that fails to draw all inferences in Plaintiffs' favor, and (2) concluding that Plaintiffs' bad-faith claim was essentially extinguished when Defendant tendered payment of $31,000 to Plaintiffs' counsel. Both of these contentions lack merit and misrepresent the analysis provided in the Court's *Memorandum Opinion and Order* [Doc. 245] as well as the evidence of record cited therein.

Contrary to Plaintiffs' contention, the Court did not view the $31,000 payment to Plaintiffs' counsel as extinguishing their bad-faith claim. On this point, the Court's *Memorandum Opinion and Order* expressly recognized that: "Defendant's $31,000 payment

to Plaintiffs does not end the matter because Plaintiffs did not agree to dismiss this lawsuit in exchange for this payment, and New Mexico courts have recognized that an insurer's claims-handling procedures may be undertaken in bad faith or in violation of statutory requirements even when the insurer does not breach the contract by refusing to pay the full amount requested by the insured." [Doc. 245, at 25.] The Court then proceeded to analyze whether the delay in payment or the investigative activities that occurred during that delay could support a bad-faith claim.

With respect to the standard of review, the Court's *Memorandum Opinion and Order* granting Defendant's motion for summary judgment noted that, so long as the evidence in question is admissible under the Federal Rules of Evidence:

> it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

[Doc. 245, at 20-22.] Later in the *Memorandum Opinion and Order*, the Court also explained why the unsworn statements contained in the preliminary report of Plaintiffs' proposed expert witness "'do[ ] not meet the requirements of Fed. Rule Civ. Proc. 56(e)' and cannot be considered by a district court in ruling on a summary judgment motion." Carr v. Tatangelo, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) (quoting Adickes v. S.J. Kress & Co., 398 U.S. 144, 158 n.17 (1970)); accord Fowle v. C & C Cola, 868 F.2d 59, 67 (3d Cir. 1989); see Sofford v. Schindler Elevator Corp., 954 F. Supp. 1459, 1462-63 (D. Colo. 1997)

(collecting cases). [Doc. 245, at 30.] Defendant specifically objected to this report in their reply brief. [Doc. 219, at 4-5.]

In moving to alter or amend the judgment, Plaintiffs cite no authority suggesting that the standard of review explained above is clearly erroneous, manifestly unjust, or subject to an intervening change in the controlling law. Rather, Plaintiffs fault the Court for not making certain inferences in their favor.

The extent to which the Court may make such inferences in ruling on a motion for summary judgment is limited by the following considerations. First, the inferences which Plaintiffs seek must be *reasonable*. And in order to be reasonable, such inferences must find support in definite, competent evidence cited by the parties and made part of the record at time of completion of briefing on the motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The Court cannot manufacture grounds for denying a motion for summary judgment by piling inference upon inference without "solid, fact-specific footings." Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1516 (1st Cir. 1989); see NLRB v. Meinholdt Mfg., Inc., 451 F.2d 737, 738 (10th Cir. 1971).

In order to support a reasonable inference, the evidence must be "significantly probative" and not "merely colorable." Anderson, 477 U.S. at 249-50 (citations omitted). Merely positing a "plausible scenario" is not sufficient to "counter direct evidence offered in support of a motion for summary judgment." Swanson v. Leggett & Platt, Inc., 154 F.3d

730, 733 (7th Cir. 1998). Thus, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). Claims which rely on a standard of "reasonableness" also are not shielded from summary judgment by such unsupported inferences or allegations. See, e.g., Meyer v. Conlon, 162 F.3d 1264, 1273-74 (10th Cir. 1998) (insurance bad-faith claim); Smith v. Midland Brake, Inc., 180 F.3d 1154, 1180 (10th Cir. 1999) (en banc) (disability discrimination claim).

The inferences Plaintiffs seek also must bear some relationship to a factual issue that is both *genuine* and *material*. See Anderson, 477 U.S. at 247-48. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. Thus, for example, a factual dispute concerning an affirmative defense will not preclude summary judgment when Defendant need not rely on that defense because Plaintiffs have not come forward with evidence supporting an essential element of their claims, on which they bear the burden of proof. And a factual dispute concerning one element of such a claim does not preclude summary judgment if Plaintiffs have not come forward with evidence to support another essential element of that claim. See Adler, 144 F.3d at 670.

The inferences that Plaintiffs ask the Court to draw in their *Motion to Alter or Amend Judgment* do not meet the criteria recited above. Plaintiffs' motion begins by pointing to

evidence concerning the date on which Defendants allegedly transmitted the correct version of the insurance policy to Plaintiffs' counsel after the litigation commenced. [Doc. 247, at 2.] Such evidence might be relevant if, at the time of the Court's ruling, the insurer completely denied the claim or refused to pay a portion of the amount due under the policy based on previously undisclosed exclusionary language therein. But in this case, it is undisputed that Defendant paid the claim in an amount that Plaintiffs agreed was equal to the fair market value of the stolen vehicle. [Doc. 245, at 23.] Plaintiffs cite no authority to support the inference that the alleged delay in producing the correct version of the policy increases the fair market value of the stolen vehicle or entitles them to recover a greater amount than the correct version of the policy provides.

In previously assessing Plaintiffs' contentions regarding the insurance policy, the Court specifically cited the version of that policy which Plaintiffs themselves submitted as evidence in support of their motion for summary judgment on their contract claim. [Doc. 245, at 2. n.1, citing Ex. A to Doc. 8.] Plaintiffs fail to show any material differences between the language of the policy they submitted as evidence and the language of the policy cited in the Court's *Memorandum Opinion and Order*.

The Court's *Memorandum Opinion and Order* also noted that Plaintiffs failed to come forward with admissible evidence that the version of the policy they submitted entitled them to more than the fair market value of $31,000 after additions and subtractions listed in the policy for taxes, title fees, and the deductible. [Doc. 245, at 25 n.4.] Having previously failed to itemize such additions or subtractions based on evidence available during the prior

briefing on the motions for summary judgment, Fed. R. Civ. P. 59(e) does not provide grounds for raising this issue anew.

Plaintiffs' *Motion to Alter or Amend Judgment* next faults the Court for not drawing inferences of bad faith from the deposition testimony of Defendant's adjusters and investigators to the effect that, at the time their depositions were taken, they did not know or were not aware that the information supplied by Plaintiffs during the claims-adjusting process was false or incorrect. Again, such evidence might have been material if, at the time these depositions were taken, Defendant had completely denied the claim based on the "fraud and misrepresentation" exclusion in the policy. But when the depositions were taken, Defendant already had paid the claim and was not relying on personal knowledge of its adjusters or investigators as to any falsehoods or errors in the information supplied by Plaintiffs.

With respect to the delay in paying the claim, the material issue was not whether Defendant's adjuster or investigator had personal knowledge or recollection of falsehoods or inaccuracies at the time their depositions were taken, but whether they had reason to further investigate the value of Plaintiffs' vehicle or the circumstances surrounding its loss before Defendant made the $31,000 payment. With respect to the latter issue, there was deposition testimony and other evidence from the adjuster and investigator indicating the basis for their initial concerns [Doc. 202, Stevenson Dep. at 61; Doc. 205, Stevenson Dep. at 14-15; Doc. 237, Ex. 3, at 39-42; Stevenson Dep. at 37; Stevenson Aff. ¶¶ 9, 10, Ex. G,

H], as well as undisputed evidence of industry standards which provide some measure of the reasonableness or objectivity of those concerns [Doc. 237, Zalma Aff. ¶¶ 3-4, Ex. A].

On this record, the Court ruled that an insurer's actions in further investigating a claim do not become unreasonable or in bad faith simply because at a later time the insurer receives additional information dispelling its suspicions and pays the insured for the disputed value of the claim. See Suggs v. State Farm Fire and Cas. Co., 833 F.2d 883, 891 (10th Cir. 1987). [Doc. 245, at 35.] In other words, the fact that an insurer's initial suspicions are later dispelled as the result of additional investigation does not necessarily support a reasonable inference that the insurer acted unreasonably or in bad faith at the time the investigation was undertaken or before the results of that investigation were fully available.

By the same token, the fact that an insurer initially offers to pay a claim in a lesser amount does not necessarily preclude a finding that the insurer acted reasonably and in good faith when retracting that offer after additional information or analysis came to light which called into question the accuracy of its initial offer or the validity of the claim itself. Thus, the fact that Defendant's file contains a "pay code" coinciding with the initial offer of July 8, 2004, or that Defendant's investigator did not reach a definite conclusion that the claim was fraudulent prior to that date, does not support a reasonable inference that Defendant acted unreasonably or in bad faith in failing to offer a higher amount before completing additional investigative steps.

Plaintiffs next contend that the Court ignored evidence supporting an inference that Defendant's adjusters already had all the information they needed to pay the claim in the

requested amount of $31,000 before undertaking any additional investigation. Contrary to this contention, the Court's *Memorandum Opinion and Order* expressly considered Plaintiff David Stephens' testimony that he provided Ms. Stevenson with certain information in response to her letter of May 13, 2004, within "about two months" of that date. [Doc. 245, at 7, citing David Stephens Dep. at 86-87.] The Court also considered the deposition testimony indicating that Mr. Stephens had referred Ms. Stevenson to the receipts for after-market parts when conversing with her about the rejection of Defendant's second offer. [Doc. 245, at 8, citing Stevenson Dep. at 37.]

The evidence of record at the time the motions for summary judgment were briefed does not support a reasonable inference that Defendant acted unreasonably or in bad faith by continuing its investigation after receiving such materials. Among other things, Plaintiff had yet to supply any documentation showing the source of the funds used to pay the $31,000 purchase price for the vehicle, and there was the issue of the conflict between the receipts for after-market parts and the dates during which the vehicle was reported stolen by its previous owner.

Plaintiffs wish to draw the inference that Defendant did not know of the conflict between the receipts and the prior theft report when the company decided to further investigate the claim on July 15, 2004. To support this inference, Plaintiffs point to an excerpt from Ms. Stevenson's deposition testimony in which she stated that she could not give the exact date when she received the receipts in question. [Doc. 205, Stevenson Dep. at 16-17.]

Ms. Stevenson's failure to give an exact date in this excerpt from her deposition testimony is not a license for Plaintiffs to attribute whatever date they wish to the events in question. Rather, the Court must look to the evidence of record to determine whether a reasonable inference can be drawn as to when Ms. Stevenson received the receipts in relation to other events. In this regard, Ms. Stevenson also testified that she received the receipts in question from Mr. Stephens [Doc. 205, Stevenson Dep. at 16], spoke with him about the receipts when he refused her second offer [id. at 37], and was looking at dates on the receipts in conjunction with the ISO report concerning the prior theft [id. at 14], which she printed on July 15, 2004 [Doc. 237, Stevenson Aff. ¶¶ 9, 10, Ex. G, H]. Ms. Stevenson also testified that she *talked to* someone about the ISO report on July 20, 2004, but this statement does not contradict her testimony and supporting documentation showing that she *printed* the ISO report on July 15, 2004. [Doc. 202, Stevenson Dep. at 102-03.]

Contrary to their assertion that Ms. Stevenson did not have the receipts from Mr. Stephens until after July 15, 2004, Plaintiffs' *Motion to Alter or Amend Judgment* states that "Plaintiff David Stephens provided GEICO with the required proof of loss forms and complied with the requests made by adjuster Robin Stevenson prior to . . . July 8, 2004." [Doc. 247, at 4.] The evidence of record reflects that Ms. Stevenson's requests specifically included "receipts for any upgrades or add ons to your auto," as documented in her letter of May 13, 2004. [Doc. 237, Stevenson Aff. ¶ 6, Ex. C.] Mr. Stephens acknowledged receiving this letter and testified that it took him "about two months" to compile and send information in response. [Doc. 237, David Stephens Dep. at 86-87.] The completed

-11-

questionnaire and affidavit included in this response are stamped with a date of June 11, 2004. [Doc. 189, Ex. CC, DD; Stevenson Dep. at 94-95.] Defendant's investigator, Mr. Hourigan, also supplied an affidavit and deposition testimony indicating that he obtained another set of receipts from the vehicle's previous owner, Mr. Chase, and promptly forwarded them to Ms. Stevenson. [Doc. 237, Hourigan Aff. ¶ 2; Doc. 202, Hourigan Dep. at 21.]

While there may be questions about exactly when and from whom Ms. Stevenson obtained the receipts she used in her analysis, none of this evidence contradicts her deposition testimony and affidavit stating that she reviewed the receipts before, or concurrently with, her decision to further investigate the claim on July 15, 2004. The logical inference is that Ms. Stevenson awaited Mr. Stephens' response to her letter of May 13, 2004, before issuing her letter of July 15, 2004. Plaintiffs cannot have it both ways by claiming that they responded completely to Ms. Stevenson's requests before July 8, 2004, while at the same time claiming that Ms. Stevenson could not have reviewed the receipts included with that response until after July 15, 2004.

As for documenting the source of the funds Plaintiffs used to pay the purchase price of $31,000, Plaintiffs contend that Defendant already had the means to accomplish this task because they provided "authorizations" or "papers authorizing release of information to GEICO." In support of this contention, Plaintiffs cite the deposition testimony of Defendant's investigator, Mr. Hourigan, who acknowledged that he received such papers from Mr. Rosales and did not use them to access any account information from Texas banks.

[Doc. 202, Hourigan Dep. at 16.]   Mr. Rosales was the attorney who requested and conducted the first examination under oath (EUO) on August 16, 2004. [Doc. 237, Rosales Aff. ¶¶ 2, 4; Ex. B.]

At that examination, Mr. Stephens admitted that he had no bank accounts in Texas in the past three years, even though his previous recorded statement to Ms. Stevenson was that $15,000 of the money he had paid for the car in April 2004 he "took out of an account in Texas." [Doc. 237, Ex. 3, at 29-30; Ex. B to Stevenson Aff; David Stephens Dep. at 22-23, 29, 40.]  Moreover, Mr. Stephens contradicted his earlier statement that he had paid for the car himself, as indicated in the recorded interview on May 13, 2004.  Instead, he admitted at the examination under oath on August 16, 2004, that his brother, Jay Stephens, invested in the car with him by paying $15,000 of the purchase price.  [Doc. 11, Ex. 1, at 24-25.]  Mr. Stephens further explained that he kept relatively large amounts of cash on hand because he was in the process of buying and selling various automobiles.  [Doc. 11, Ex. 1, at 25-26, 35-38.]  Most if not all of the remaining $16,000 of the purchase price apparently came from Mr. Stephens' personal cash supply.

Based on Mr. Stephens' testimony at the first examination under oath, any authorizations he provided to Mr. Rosales, or that Mr. Rosales forwarded to Mr. Hourigan, with respect to the release of information from third parties (such as Texas banks) would not have revealed the source of the funds in question, because Mr. Stephens had no bank accounts in Texas, and his authorizations would not have allowed Defendant to gain access to the accounts of his brother.  Thus, the fact that Plaintiffs provided certain authorizations

-13-

to Mr. Rosales or Mr. Hourigan does not support a reasonable inference that Defendant had the means to obtain the documentation for the source of the funds used to purchase the stolen vehicle without further investigative efforts.

The Court will not address the additional arguments and evidence in Plaintiffs' *Motion to Alter or Amend Judgment* because, as noted above, such a motion is not the proper means "to revisit issues already addressed or advance arguments that could have been raised in prior briefing," or "to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Servants of Paraclete, 204 F.3d at 1012; accord 11 Wright, Miller & Kane, *supra* § 2810.1, at 127-28. The foregoing analysis illustrates why the factual disputes raised in Plaintiffs' motion are not material, and why the inferences Plaintiffs seek to draw are not reasonable. Accordingly, Plaintiffs have failed to show the type of clear error or manifest injustice that would warrant relief under Fed. R. Civ. P. 59(e).

**IT IS THEREFORE ORDERED** that Plaintiffs' *Motion to Alter or Amend Judgment* is **DENIED**.

**SO ORDERED**, this 15th day of May, 2006, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge